State of Vermont v. Donald Joseph Veilleux

[439 A.2d 277]

No. 7-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed December 10, 1981

518

*Philip H. White,* Orleans County State's Attorney, and *William H. Rice,* Deputy State's Attorney, Newport, for Plaintiff.

*Rexford & Kilmartin,* Newport, for Defendant.

**Peck, J.** Defendant Donald Joseph Veilleux was convicted of operating a motor vehicle on a public highway while under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201(a)(2). He appeals his conviction to this Court; we affirm.

The record of the jury trial discloses that on the evening of March 1, 1980, a deputy sheriff was patrolling the streets of Orleans Village when he observed a red Plymouth Volare motor vehicle in the yard of a gasoline service station, "backing up, going forward, backing up" as though it "might have been stuck but there wasn't any snow in the yard," or any ice.

This unusual maneuvering continued for approximately five minutes. The car was then driven forward out of the service station yard heading west on Route 58, a public highway. The deputy followed in a sheriff's cruiser observing the manner in which it was being operated.

Once on the highway the Volare was driven slowly, at a rate of speed estimated by the deputy as approximately five miles per hour, at the same time weaving an erratic course between the main travelled portion of the highway and the right hand shoulder. Shortly thereafter, continuing its slow and uncertain progress, the Volare entered the access ramp to Interstate Highway 91. The deputy followed the car up the ramp and stopped it as it entered the northbound lane of the interstate, where he discovered the driver to be the defendant. He noted the latter's eyes were bloodshot and dilated, and detected an odor of alcohol on defendant's breath. When he walked to the cruiser at the deputy's request, the testimony was: "I noticed . . . that he staggered."

The deputy radioed to the state police for assistance, and shortly thereafter, two state police officers arrived at the scene. The deputy asked the senior officer to take over the "processing" of the defendant which he did, administering certain routine speech, balancing and dexterity tests with unsatisfactory results. The officer noted also that defendant's clothes and hair were in disarray, and confirmed the deputy's observations that defendant staggered when he walked, and that his eyes were dilated. In response to a question by counsel for the State as to "whether or not Mr. Veilleux was intoxicated," the officer responded, "It appeared to me that he had been drinking."

Through the testimony of a companion who was in defendant's car when it was stopped, it appears that the two men had been together since the noon hour of March first; that during the course of the afternoon they had been in at least three establishments where alcoholic beverages could be obtained and that both had been served beer. The companion however said he had been too drunk to remember how many beers the defendant had taken; he claimed to be unable to remember more than four with any certitude.

The defendant's car was inspected and a number of empty beer bottles were found. The exact number does not appear, nor is there any direct evidence that defendant himself had consumed the contents of any of them, or if he had, how many. Some of the bottles were, however, on the floor in front of the driver's seat.

At the close of the State's evidence defendant moved for a judgment of acquittal on the grounds that the State had failed to establish a prima facie case of operation on a public highway while under the influence of intoxicating liquor. The court denied the motion whereupon defendant advised he would not present any evidence; instead he rested and renewed his motion for acquittal; again the court denied the motion.

■■ On appeal defendant raises several questions. First, he contends the officer's statement that defendant appeared to have been drinking did not constitute an opinion on the state of his sobriety. He argues therefore that the lower court's charge to the jury "that a layman is competent on the basis of observation to testify as to the state of the defendant's

sobriety," was prejudical error because the jury could have been persuaded that the officer's statement did constitute a sobriety opinion, and in reliance on the court's charge may have considered the statement in determining guilt.

Granting the obvious, the word "drinking" standing alone may not be instructive of anything suggesting the nature of the beverage ingested or its effect upon the imbiber. Courts and juries are not so ingenuous however as to accept the suggestion that the phrase "he had been drinking," when coupled with testimony of physical observations and other evidence of an excessive use of alcoholic beverages, is so ambiguous that it might refer to a person who has taken nothing more threatening to sobriety than a glass of milk. Within this framework, the common application of the phrase in the current idiom, particularly in cases involving the operation of a motor vehicle, describes a person who has not only been drinking an alcoholic beverage, but indicates as well that the person is impaired by his indulgence.

It is proper then to examine the officer's statement in the context of the observations he was able to make of defendant during the evening of March 1, 1980. Given the clinical symptoms observed by the officer we conclude, first, that there was a sufficient foundation for the statement of an opinion, and secondly, while it may not have been the ideal manner of expressing it, the statement, "It appeared to me he had been drinking," was in fact an opinion that defendant was under the influence of intoxicating liquor. Accordingly, we hold the court's instruction to the jury was proper and was not prejudicial. There was no error.

■ Defendant claims further that even if the statement did constitute an opinion, it did not relate back to the time he was stopped by the deputy sheriff. Therefore, argues defendant, if we infer from the testimony that he was under the influence of intoxicants at the time the officer observed him, it then became necessary to infer additionally that he was in the same condition while operating his vehicle, which the officer did not observe personally. This, says defendant, constitutes an impermissible inference upon an inference. *Gero* v. *John Hancock Mutual Life Insurance Co.*, 111 Vt. 462, 479–81, 18 A.2d 154, 163 (1941).

This argument overlooks the fact that the jury had before it more than the testimony of the officer. Taking the evidence most favorable to the State, as we must, *Pooler* v. *Derby,* 129 Vt. 362, 364, 278 A.2d 732, 734 (1971), the record shows an uninterrupted chain of events, presented through the testimony of the sheriff's deputy, commencing at the service station in Orleans Village and continuing with no hiatus in the deputy's observation until the arrival of the state police officers. It seems probable indeed that the evidence of the deputy alone would have supported a verdict of guilty.

Only if we consider the officer's testimony in a vacuum can it be said to require an inference on an inference, or that it cannot be related back to the time of operation. There is no justification for such a limited review of the evidence. This testimony was clearly supportive and cumulative in establishing one of the ultimate facts to be proved, the state of defendant's sobriety.

Defendant contends next that the State failed to present a case which excluded every reasonable hypothesis consistent with his innocence. *State* v. *Larose,* 138 Vt. 281, 289, 415 A.2d 210, 214 (1980). He argues from this premise that the trial court erred in denying his motion for a judgment of acquittal.

█ In requiring the exclusion of all reasonable hypotheses consistent with innocence, the key word is "reasonable." It is not every potential explanation, every speculative or remote possibility of which the imagination is capable which will rise to the level of a reasonable hypothesis of innocence. *People* v. *Brant,* 82 Ill. App. 3d 847, 850, 403 N.E.2d 282, 284–85 (1980). The trier of fact is not required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt. *People* v. *Huff,* 29 Ill. 2d 315, 320, 194 N.E.2d 230, 232 (1963).

██ Each case in which the issue of a reasonable hypothesis consistent with innocence is raised must be determined on its own merits. In the instant matter, viewing the evidence in the light most favorable to the State, even if it is predominantly circumstantial as defendant contends here, and excluding the effect of any modifying evidence, *State* v. *Girouard,* 135 Vt. 123, 135, 373 A.2d 836, 844 (1977), we

think it was more than sufficient to justify a verdict of guilty. The erratic driving, staggering, bloodshot and dilated eyes, slow or slurred speech, an odor of an alcoholic beverage on the breath, a poor response to dexterity tests, and disheveled clothes and hair, taken together made up a prima facie case of driving under the influence of intoxicating liquor. Thereupon the State rested, and defendant did likewise without taking the stand himself or introducing any evidence on his own behalf. Moreover, in his instructions to the jury, the trial judge included the so-called circumstantial evidence charge, the necessity for which has now been repudiated by this Court. *State* v. *Derouchie*, 140 Vt. 437, 445, 440 A.2d 146, 150 (1981). Nevertheless, the charge was given and could have operated only to the benefit of the defendant.

 In view of our holding in *Derouchie* concerning the circumstantial evidence charge, we feel it is desirable to emphasize here what this Court has pointed out in prior decisions relating to "the risk of nonpersuasion." It is appropriate to this case in any event, since it was precisely the situation in which defendant found himself at the close of the State's case; it is also a concern which defense attorneys who have heretofore relied on the circumstantial evidence charge should keep in mind. The principle was well stated by former Chief Justice Holden in 1960:

> It is, of course, well established that a defendant in a criminal proceeding may stand on his plea of not guilty and is under no legal obligation to present any evidence in his defense. He has the right to rest entirely on the presumption that he is innocent until proved guilty. Whether he may do so without adverse effect is a different matter.

> Until the accusation of the State is supported by evidence capable of persuading fair-minded triers of the fact that there is no reasonable doubt of the respondent's guilt, the accused is secure and he may remain silent without adverse effect. However, when he is confronted with incriminating evidence sufficient to sustain a conviction, he refrains from defending at his peril. The "risk of nonpersuasion" becomes his. 9 Wigmore, Evidence, 3rd Ed. §§ 2385, 2497. At this point in the trial, if the respondent

refuses to meet the challenge of the State's evidence, his default is often detrimental to his acquittal. To be sure, the law imposes no legal obligation upon him to take the offensive, and if he refuses, no admission of guilt is involved. But to say that he may decline to defend without adverse effect obscures his risk and ignores reality.

*State* v. *Coburn,* 122 Vt. 102, 109, 165 A.2d 349, 355 (1960).

Applying this language to the matter before us, we conclude that defendant assumed the risk of nonpersuasion when he rested at the close of the State's evidence. If he had any evidence, his default may well have been detrimental to his acquittal. In short, if he gambled, he lost. The jury found him guilty and was entitled to do so. There was no error in the denial of defendant's acquittal motion.

■ Defendant advanced the novel suggestion that in a DWI case an opinion as to the accused's state of sobriety not only *may,* but *must* be given by an observer, whether lay or expert. Particularly is this so, he argues, when the facts are not so cogent as to exclude every reasonable hypothesis inconsistent with guilt.

We find no authority for this. The cases cited by defendant in his brief are not in point; on the contrary, they are addressed primarily to the proposition that a competent lay witness who has observed the condition of a suspect is qualified to give his opinion, and the testimony of an expert is not essential. *State* v. *LaFleche,* 127 Vt. 482, 486, 253 A.2d 124, 128 (1969); *State* v. *Hedding,* 114 Vt. 212, 213–14, 42 A.2d 438, 439 (1945). These and similar cases do not hold that a sobriety opinion is a *sine qua non* to the perfecting of a prima facie case. Moreover, we held earlier in this opinion that the officer's statement, "It appeared to me that he [defendant] had been drinking," considered in the context of the surrounding circumstances, constituted just such an opinion as defendant insists on.

*Judgment affirmed.*