# State of Vermont v. Morris Partlow

[460 A.2d 454]

No. 82-183

Present: Billings, C.J., Hill, Underwood and Peck, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed April 5, 1983

*Deborah O. Frankel,* Chittenden County Deputy State's Attorney, and *Robert Andres,* Law Clerk (On the Brief), Burlington, for Plaintiff-Appellee.

*Nancy E. Kaufman,* Montpelier, for Defendant-Appellant.

**Peck, J.** Defendant was tried by jury and found guilty of breaking and entering in the nighttime with the intent to commit larceny, in violation of 13 V.S.A. § 1201. Motions for acquittal at the conclusion of the case for the prosecution, and again at the close of all the evidence, on the grounds that the evidence was not sufficient to support a guilty verdict, were denied by the trial court. Defendant instituted a timely appeal to this Court from the judgment of conviction against him.

The sole question presented for review challenges again the sufficiency of the evidence to sustain the verdict. We affirm.

Taking the evidence in the light most favorable to the prosecution, which we must do in reviewing motions for acquittal, *State* v. *Prime,* 137 Vt. 340, 341–42, 403 A.2d 270, 271 (1979), the record discloses that at approximately three o'clock on the morning of April 23, 1981, a silent alarm at the Broad Acres Roller Rink building in Colchester signalled the local police department that a break-in was in progress.

An officer of the municipal police department responded, going to the site of the rink. The officer first investigated the perimeter of the building. He found the left side and back of the building secure, but as he rounded the corner from the back, he saw an open door on the right side, about fifteen feet away from him. A man emerged through this door, then quickly reentered the building when the officer called on him to stop.

The officer was unable to identify the person from the brief glimpse he had of him. However, he did describe him as wearing a brown, waist-length corduroy jacket, blue jeans, and a ski cap variously stated by the officer to be gray or blue.

The officer then ran around to the front of the building where he saw two men at the far end, about 100 feet away. One of these men was dressed in clothing identical to the individual he had seen leave and reenter the building only moments before. Again, however, the officer was unable to make a positive identification.

The two men ignored the officer's order to stop and fled into a wooded area located approximately thirty feet from the building. The officer then went to the other side of the woods hoping to intercept the two men. Eventually, he entered the woods accompanied by another officer who had arrived at the scene. There they discovered the defendant lying face down in a gully which sloped from an adjacent foot path. He was partially concealed by leaves, and was wearing a brown corduroy waist-length jacket, blue jeans and sneakers. On the ground close by, the officer discovered a gray ski cap and a lighted flashlight.

Subsequent police investigation at the rink disclosed that a glass portion of the door on the south side of the building

had been smashed, probably by a rock which lay on the floor inside the entrance. An "inside" window had been removed, and the glass panel propped against the wall. Some person or persons had effected an entry and broken into, or attempted to gain access to, the pinball, candy, and cigarette machines, and had stolen an undetermined amount of cash.

The authorities found nothing in the building to link the defendant directly to the illegal entry. His fingerprints were not found in the rink, and he had nothing on his person which had been removed from the building.

The print of a sneaker, showing a sole pattern like those worn by the defendant, was discovered on the grounds near the rink building. However, no expert testimony was offered by the State to show that the print was in fact made by one of defendant's sneakers. Given the likelihood that identical footwear are in common use, this item was a frail evidentiary seed. Standing alone it would hardly support a guilty verdict. Nevertheless, except for the fact that the State failed to establish that the print was that of defendant's sneaker, the evidence was before the jury for what it was worth. They had available for comparison photographs of the print and of the sole of the corresponding sneaker worn by the defendant, from which they could draw their own conclusions.

The defense was compelled to rely heavily on the credibility of three closely related witnesses. The defendant took the stand in his own behalf, and his testimony was bolstered by that of his mother and his aunt.

According to the testimony of these three, defendant and his mother had driven from Swanton, where they resided at that time, towards Burlington. When they reached the general area in which the rink was located, they decided to stop to look for a place to eat, but found no place open. An argument then broke out as to who should drive. The mother, claiming defendant had had too much to drink, refused to turn over the car keys to him. Instead, she locked the driver's side of the car and, taking the keys with her, walked off. She subsequently placed a phone call to her former sister-in-law in Swanton, defendant's aunt, who came for her and drove her home.

Defendant testified that after his mother left him he tried unsuccessfully to hitchhike a ride home. When he failed to

obtain a ride, he entered the wooded area near the Broad Acres rink. It was a cold night; he conceded the temperature was "probably" in the thirties. Nevertheless, claiming he was tired and drunk, he decided to lie down in the woods and try to sleep. This, he said, he did, and remained there until the police officers found him shortly after three o'clock in the morning.

■■ The evidence in this case is entirely circumstantial. It is well-settled, however, that in a criminal case the guilt of a defendant may be established by circumstantial evidence alone. *State* v. *Colby,* 140 Vt. 638, 642, 443 A.2d 456, 457 (1982). If the elements of every crime, especially those which are premeditated, had to be proved by direct evidence, there would be few, if any, convictions. *Id.* at 641. "[O]ur test, where sufficiency is in question, [is] whether the evidence, viewed in the light most favorable to the State, is sufficient to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." *State* v. *Hanson,* 141 Vt. 228, 233, 446 A.2d 372, 375 (1982).

■ This is not to say there are no other criteria to be applied before the reasonable doubt standard is satisfied; certainly there are. Of particular concern here are our several holdings that evidence giving rise to mere suspicion of guilt, or leaving guilt uncertain or dependent upon conjecture, is insufficient. *State* v. *Savo,* 139 Vt. 644, 647, 433 A.2d 292, 293 (1981) (element of intent) ; *State* v. *Benoit,* 136 Vt. 431, 435–36, 392 A.2d 406, 408 (1978) (identification of defendant as the burglar). However, these holdings must not be interpreted so broadly as to preclude all possibility of convicting on circumstantial evidence alone.

■■ This Court has held further that "standing alone flight is insufficient to convict." *State* v. *Menard,* 142 Vt. 47, 49, 451 A.2d 1100, 1101 (1982). However, we have held also that a jury can properly infer consciousness of guilt, and thus guilt, from evidence of flight, *id.; State* v. *Unwin,* 139 Vt. 186, 193, 424 A.2d 251, 255 (1980) ; that evidence of flight may be considered by the jury, *State* v. *Jaramillo,* 140 Vt. 206, 209, 436 A.2d 757, 759 (1981) ; and that evidence of flight immediately after the commission of an alleged offense is admissible,

and if unexplained, tends to show guilt. *State* v. *Dugee,* 101 Vt. 491, 494, 144 A. 689, 690 (1929).

In the instant case the jury had before it sufficient circumstantial evidence from which it could infer defendant's guilt: the similarity of the clothing observed by the police officer on the person he saw at the site of the break-in shortly after the burglar alarm was activated, and that worn by the defendant or, in the case of the ski hat, found near him in the woods; the lighted flashlight, also found close by the defendant; the emergence from the roller rink building, and immediate flight into the woods, of the figure resembling the defendant in all visible respects.

In *State* v. *Benoit, supra,* which this case resembles in some factual aspects, the defendant was discovered in the snow under his car near the gasoline station which had been burglarized. The soles of his boots revealed the presence of petroleum hydrocarbons which could have been picked up from the floor of the gasoline station, but might also have been scraped from the underside of the car beneath which he was discovered. Also, defendant's footprints in the snow led from the station yard to the car.

■ Notwithstanding the highly probative nature of the evidence, and of inconsistent statements by defendant, we held that absent any direct evidence that the defendant had ever been in the station, or had been at the scene of the crime at the time of its commission, the evidence created no more than suspicion, and suspicion itself is not evidence. *State* v. *Benoit, supra,* at 435–36, 392 A.2d at 408. Given that factual pattern, we held the motion for a judgment of acquittal should have been granted. At the time *Benoit* was decided, when a verdict rested entirely on circumstantial evidence, the test on review required that the circumstances shown must exclude every reasonable hypothesis except that the defendant is guilty. That test has been modified by our decision in *State* v. *Derouchie,* 140 Vt. 437, 440 A.2d 146 (1981), holding that in criminal cases, regardless of the nature of the evidence, it must be sufficient to sustain the State's burden of proof beyond a reasonable doubt.

Our decision in *Benoit* demonstrates the abundance of caution appropriate to cases where the evidence is entirely cir-

cumstantial as it was there, and as it is here with respect to defendant's identity and participation. Nevertheless, in the instant case, there are additional and even more cogent factual elements pointing to the defendant's guilt.

A person whose general description corresponded with that of defendant was in the building only a few minutes after the alarm signalled that an entry had been made. When that person emerged from the building, he fled, after being ordered to stop by the investigating officer. A sneaker print, corresponding, at least, to the sole of the sneakers worn by defendant, was discovered near the building.

In our judgment the evidence of defendant's identity and participation in the burglary, taken in the light most favorable to the State, was relevant. *State* v. *Bevins*, 140 Vt. 415, 419, 439 A.2d 271, 272 (1981). Although it was entirely circumstantial, we hold it was sufficiently cogent and persuasive to lift its effect above mere suspicion in the sense we employed that term in *Benoit*. The other elements which must be proved by the State in order to convict for a violation of 13 V.S.A. § 1201 were not in serious dispute. The breaking and entry into a building, the fact it occurred in the nighttime, the presence of property which was the subject of larceny, and larcenous intent on the part of someone, are all well supported by credible evidence.

Defendant claims next that the State failed to prove beyond a reasonable doubt that he was a knowing participant in the offense charged. He contends that as far as the evidence shows, he might as well have "stumbled upon the break-in and fled in fear and confusion when the police arrived," as to have been an active participant.

We are not persuaded by this argument. There was credible evidence from which the jury could infer that it was the defendant who emerged from the building, ran back in, emerged again from another exit and fled. Given this evidence, and combining it with the totality of all the facts and the questions of credibility, it was a function of the jury to sift the evidence and resolve the issue of participation. A proper inference, based on admissible evidence, cannot be cloaked in a manufactured fog of error by calling it mere

speculation or conjecture. We will not substitute "speculation" for "proper inference," when the latter is appropriate.

Further, considering all the evidence, particularly in the light most favorable to the State, to argue that defendant might simply have "stumbled on the break-in" strains credulity.

> It is not every potential explanation, every speculative or remote possibility of which the imagination is capable which will rise to the level of a reasonable hypothesis of innocence. The trier of fact is not required to search out a series of potential explanations and elevate them to the status of a reasonable doubt.

*State* v. *Veilleux,* 140 Vt. 517, 522, 439 A.2d 277, 280 (1981) (citations omitted).

Finally, defendant complains that the jury did not return special verdicts as to the guilt or innocence of the accused as a principal or as an accessory. It is a sufficient answer to this complaint that defendant made no request for such special verdicts; defendant was charged as a principal, and found guilty as charged. We find no error.

*Affirmed.*