NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 10

No. 25-AP-079

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Addison Unit, |
| | Criminal Division |
| | |
| Rein Kolts | January Term, 2026 |

Michael S. Kupersmith, J. (Ret.)

Evan Meenan, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Marshall Pahl, Appellate Defender, Montpelier, for
   Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton and Waples, JJ., and Barra, Supr. J., and Cohen, J. (Ret.),
            Specially Assigned

¶ 1.     **EATON, J.**   Defendant Rein Kolts appeals his convictions of aggravated sexual assault. He makes three arguments on appeal. Defendant argues that the trial court erred when it denied his motion for acquittal on count two; that the trial court violated his constitutional rights by allowing a conviction based on a lower standard of proof than constitutionally required; and that the trial court abused its discretion by admitting prior-bad-act evidence. We conclude that the State presented sufficient evidence for conviction. However, because we also conclude that defendant's constitutional rights were violated by an erroneous jury instruction, we reverse and remand for a new trial. Thus, we do not reach defendant's evidentiary argument concerning evidence of a prior bad act.

¶ 2.      In 2018, N.H., then twenty, revealed to her parents that defendant, her uncle, had sexually assaulted her as a child.  Following an investigation into the events, the State charged defendant with two counts of aggravated sexual assault pursuant to 13 V.S.A. § 3253(a)(8).  Count one alleged oral sexual contact between defendant and N.H.  Count two alleged penetrative sexual contact.  Both charges describe the relevant contact occurring between January 1, 2005, and December 31, 2011.  In May 2024, a jury found defendant guilty of both counts.  Defendant timely appealed to this Court.  As explained more fully below, we reverse and remand.

## I.  Sufficiency of the Evidence on Count Two

¶ 3.      We begin with defendant's argument concerning the sufficiency of the evidence on count two.  As in all criminal cases, "the State is required to prove beyond a reasonable doubt each element of the alleged offense."  State v. Anderkin, 145 Vt. 240, 243, 487 A.2d 142, 143 (1984).  Relevant to the charge at issue here, a conviction for aggravated sexual assault pursuant to 13 V.S.A. § 3253(a)(8) requires that defendant sexually assaulted the victim, and that, at the time of the assault, the victim was under the age of thirteen.[1]  See also 13 V.S.A. § 3252 (outlining elements of "sexual assault").

¶ 4.      While N.H. testified that defendant sexually assaulted her at least fifty to sixty times, at trial, the State largely focused its evidence on two specific instances.  Relevant to count one, N.H. testified that defendant first forced her to perform oral sex when she was about "six or seven."

¶ 5.      Relevant to count two, N.H. testified that defendant penetrated her "a handful of times" in defendant's barn, but, according to N.H., the "most significant" instance occurred when she was "in the sixth grade."

---

[1]  The record indicates that the State elected not to charge defendant with sexual assault pursuant to 13 V.S.A. § 3252 as a lesser-included offense.

2

¶ 6.     Following the State's evidence, defendant moved for a judgment of acquittal on count two, arguing that the State had failed to meet its burden to prove both elements of 13 V.S.A. § 3253(a)(8).  Specifically, defendant asserted that the circumstantial evidence presented by the State was insufficient to support a conclusion that N.H. was under the age of thirteen at the time of the assault in the barn.  The trial court denied defendant's motion for acquittal.

¶ 7.     In reviewing a trial court's denial of a motion for acquittal, we apply the same standard used by the trial court.  State v. Davis, 2018 VT 33, ¶ 14, 207 Vt. 346, 186 A.3d 1088.  We view the evidence presented "in the light most favorable to the State, excluding any modifying evidence, and determine whether it is sufficient to fairly and reasonably convince a trier of fact that the defendant is guilty beyond a reasonable doubt."  Id. (quotation omitted).

¶ 8.     As we have frequently articulated, "[a] jury," not a court, "is in the best position to weigh facts and deliver a verdict, particularly in close fact-dependent cases."  State v. Cameron, 2016 VT 134, ¶ 5, 204 Vt. 52, 163 A.3d 545.  Accordingly, the standard for judgment of acquittal "is a highly deferential standard."  Id.  We have also explained that "[a] jury may draw rational inferences from the circumstantial evidence to determine whether disputed ultimate facts occurred."  State v. Perrault, 2017 VT 67, ¶ 30, 205 Vt. 235, 173 A.3d 335 (quotation omitted).  We note, however, that "evidence that gives rise to mere suspicion of guilt or leaves guilt uncertain or dependent upon conjecture is insufficient."  State v. Durenleau, 163 Vt. 8, 10, 652 A.2d 981, 982 (1994).  In sum, "[a] court shall grant the motion for acquittal only if the prosecution has failed to put forth any evidence to substantiate a jury verdict."  Perrault, 2017 VT 67, ¶ 30 (emphasis added) (quotation omitted).

¶ 9.     The record indicates that the State introduced the following evidence regarding N.H.'s age.  N.H. was born on May 5, 1998.  Defendant began to sexually assault N.H. in 2005, the year she turned seven.  According to N.H.'s testimony, the first assault occurred in defendant's art studio when N.H. was "six or seven" years old.  Defendant continued to assault N.H. for a

3

number of years, including multiple assaults in defendant's barn. N.H. testified that the last "stark" sexual assault in the barn occurred when she was "in the sixth grade." At trial, when asked whether the barn N.H. was referencing was the "same barn where [defendant] made you have sex with him when you were age eleven and under," N.H. agreed. N.H. also testified that she could not "set a clear date on the last assaults" but answered affirmatively to a question asking her to confirm that the assaults "stopped" when she was "eleven or twelve." On cross-examination, N.H. agreed that the "last time" was when she was "twelve or thirteen."[2] N.H. also explained that she was twenty-five when she testified before the jury on May 2, 2024.

¶ 10. We conclude that, based on the State's evidence, a juror could fairly and reasonably conclude that N.H. was under the age of thirteen when defendant assaulted her in his barn. As described above, the record indicates that N.H. agreed that the assaults in the barn occurred when she was "eleven and under." Additionally, in response to another question, N.H. confirmed that the assaults "stopped" when she was "eleven or twelve." Both of N.H.'s answers sufficiently support the conclusion that she was under thirteen at the time of the specified assault in the barn. See Perrault, 2017 VT 67, ¶ 30 ("A court shall grant the motion for acquittal only if the prosecution has failed to put forth any evidence to substantiate a jury verdict." (quotation omitted)).

¶ 11. Defendant points to N.H.'s testimony that the specified assault in the barn occurred when she was "in the sixth grade" and argues that this is insufficient for conviction. According to defendant, this evidence requires "the assumption or inference of facts not in evidence" to reach the conclusion that N.H. was under the age of thirteen at the time of the assault in the barn. Specifically, defendant asserts that, to conclude N.H. was under the age of thirteen "the court and

---

[2] It is unclear whether N.H. understood the questions asked by defendant's attorney to be referencing the "last" assault in the barn, or the "last" assault generally. Indeed, N.H. testified that, in addition to the assaults in the barn, other penetrative assaults occurred in defendant's great room on his couch, in his car, and in defendant's main or secondary bed. According to N.H., the assault she described in the barn was the "most significant time," and she believed defendant penetrated her after the assault in the barn but could not "recall particular memories" of those assaults.

4

jury had to assume that seven years passed between sixth grade and high-school graduation" but argues that "[t]here was no evidence of that—it is simply an assumption." We disagree.

¶ 12. We have frequently stated that a jury can "employ rational inferences to bridge factual gaps left by circumstantial evidence." Durenleau, 163 Vt. at 14, 652 A.2d at 984. Here, the evidence introduced about N.H.'s academic career indicates a typical progression through school. N.H. graduated from high school in 2016, the year she turned eighteen. N.H. graduated from college four years later in 2020, the year she turned twenty-two. N.H. also testified that, at the time of the trial, she was a PhD student. While not the only conclusion a jury could reach, the significant circumstantial evidence supporting N.H.'s typical academic progression supports the conclusion that in the sixth grade, N.H. was under the age of thirteen. See State v. Messier, 146 Vt. 145, 150-51, 499 A.2d 32, 37 (1985) (explaining "[t]he State is not required to exclude every reasonable hypothesis of innocence in proving its case" and "[t]he trier of fact is not required to search out a series of potential explanations compatible with innocence, and elevate them to the status of a reasonable doubt" (quotation omitted)).

¶ 13. Defendant also points to N.H.'s testimony that she was "twelve or thirteen" when the "last time" occurred. According to defendant, this testimony requires the conclusion that the evidence was insufficient to demonstrate that N.H. was under the age of thirteen during the assault in the barn. Even assuming that the barn assault was the "last time," defendant's argument does not prevail. As described above, N.H. answered two questions concerning when the assaults stopped. N.H. testified both that the "last time" occurred when she was "twelve or thirteen" and also answered in the affirmative that the assaults "stopped" when she was "eleven or twelve." To the extent that these statements are in conflict, conflicting evidence does not prevent a juror from drawing rational inferences to reach an ultimate conclusion. See State v. Tenney, 143 Vt. 213, 216, 464 A.2d 747, 748 (1983) ("[W]e have consistently held that it is the exclusive province of the jury, . . . to resolve . . . contradictions." (quotation omitted)). Furthermore, "[c]redibility

questions raised by the evidence at trial are 'entirely within the province of the jury.' " State v. Hammond, 2012 VT 48, ¶ 14, 192 Vt. 48, 54 A.3d 151 (quoting State v. Hinchliffe, 2009 VT 111, ¶ 22, 186 Vt. 487, 987 A.2d 988). Indeed, a reasonable juror could have deemed both statements credible and thereby concluded that N.H. was twelve at the time of the "last" assault.

¶ 14. Necessarily viewed in the light most favorable to the State, the evidence presented by the State "is sufficient to fairly and reasonably convince a trier of fact" that N.H. was under the age of thirteen during the relevant assault in the barn, and, therefore, "that the defendant is guilty." Davis, 2018 VT 33, ¶ 14 (quotation omitted) (requiring courts to "grant a judgment of acquittal only when there is no evidence to support a guilty verdict" (quotation omitted)). For these reasons, the trial court did not err in denying defendant's motion for judgment of acquittal on count two.

II. Jury Instructions

¶ 15. Next, defendant argues that the trial court's reasonable-doubt instruction violated his federal constitutional rights and amounted to plain error.[3] Defendant does not argue that his rights under the Vermont Constitution were violated. As a result, we consider only whether defendant's federal due-process rights were violated by the challenged jury instruction. We conclude that: the definition of "beyond a reasonable doubt" provided by the trial court impermissibly lowered the State's burden of proof; it thereby prejudicially interfered with defendant's federal constitutional right to due process; the error was obvious under prevailing federal law; and lastly, in the interest of fairness, integrity, and reputation of judicial proceedings, we must correct this error. We overrule State v. Levitt, 2016 VT 60, 202 Vt. 193, 148 A.3d 204, to the extent it conflicts with this holding.

---

[3] Defendant argues that the trial court committed structural error when it incorrectly defined "beyond a reasonable doubt" and, in the alternative, defendant argues that the same conclusion can be reached under the plain-error standard. We do not reach defendant's structural-error argument because we conclude that the trial court's definition of "beyond a reasonable doubt" was plain error.

6

¶ 16.   In State v. Levitt this Court considered whether jury instructions that at one point defined "beyond a reasonable doubt" as "great certainty" violated the defendant's constitutional rights under the U.S. constitution.  2016 VT 60, ¶ 5.  We emphasized that federal precedent did not require the use of any specific words to define "beyond a reasonable doubt."  Id.  Furthermore, in considering Vermont cases addressing the beyond-a-reasonable-doubt standard in various other contexts and precedent from "sister state[]" courts, we concluded that the instruction as a whole was not "sufficiently misleading to be reversible error."  Id. ¶¶ 11, 13.  We highlighted that "any potential diminishment of the State's burden" through the use of the term "great certainty" in the jury instruction was "balanced by the trial court's emphasis upon the presumption of innocence afforded to [the] defendant," in addition to "the repeated references to the reasonable doubt standard without further attempts to define the term," and "the weight jurors should attach to any doubt they feel, even if it cannot be articulated."  Id. ¶ 13.  In considering controlling federal precedent on this issue, we conclude that Levitt did not properly assess the erroneous instruction.

¶ 17.   We begin with the jury charge at issue in this case.  In relevant part, the trial court defined the beyond-a-reasonable-doubt standard of proof in its jury instruction as follows:

> Few things in life are absolutely certain.  To say that you believe something beyond a reasonable doubt is to say that you are convinced of it with great certainty.  But proof beyond a reasonable doubt does not require you to be absolutely or one hundred percent certain.

¶ 18.   Defendant did not object to the jury instructions at trial and thus did not preserve this argument.  "We review unpreserved challenges to jury instructions for plain error."  State v. Blanchard, 2021 VT 13, ¶ 25, 214 Vt. 225, 256 A.3d 567; see also V.R.Cr.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").  We consider four factors to determine if plain error occurred: "(1) [T]here must be an error; (2) the error must be obvious; (3) the error must affect substantial rights and result in prejudice to the defendant; and (4) we must correct the error if it seriously affects the

fairness, integrity, or public reputation of judicial proceedings." State v. Welch, 2020 VT 74, ¶ 8, 213 Vt. 114, 249 A.3d 319 (quotation omitted).

¶ 19.    We have described plain error in the jury-instruction context as the extraordinary circumstance " 'when the entire charge undermines our confidence in the verdict' and 'the error affected a substantial right and had an unfair prejudicial impact on the jury's deliberations.' " Id. (quoting State v. Alzaga, 2019 VT 75, ¶ 18, 211 Vt. 111, 221 A.3d 378).  As part of this analysis, "[w]e read jury instructions in their entirety, not piecemeal, to ensure that they breathe the true spirit of the law, and there is no fair ground to say that the jury has been misled." Id. (quotation and alteration omitted).

¶ 20.    In criminal trials, jury instructions play a critical role in ensuring that defendants' constitutional rights are protected.  Indeed, "the Due Process Clause of the Fourteenth Amendment 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " Cage v. Louisiana, 498 U.S. 39, 39 (1990) (per curiam) (quoting In re Winship, 397 U.S. 358, 364 (1970), and citing Jackson v. Virginia, 443 U.S. 307, 315-16 (1979)), overruled in part on other grounds by Estelle v. McGuire, 502 U.S. 62 (1991).  The beyond-a-reasonable-doubt standard of proof "plays a vital role in the American scheme of criminal procedure" because "[i]t is a prime instrument for reducing the risk of convictions resting on factual error." Winship, 397 U.S. at 363.  As such, "[r]eduction of the government's burden of proof . . . is impermissibly inconsistent with the constitutionally rooted presumption of innocence." United States v. Partin, 552 F.2d 621, 629 (5th Cir. 1977) (quotation omitted); see also Cool v. United States, 409 U.S. 100, 104 (1972) (per curiam) (reversing and remanding case where "the trial judge reduced the level of proof necessary for the Government to carry its burden . . . [b]ecause such a requirement is plainly inconsistent with the constitutionally rooted presumption of innocence.").

¶ 21. This Court and the U.S. Supreme Court have not required or encouraged trial courts to define "beyond a reasonable doubt." See, e.g., State v. McMahon, 158 Vt. 640, 641, 603 A.2d 1128, 1129 (1992) (holding there was no error when reasonable doubt was not defined); Victor v. Nebraska, 511 U.S. 1, 5 (1994) ("The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course."). Indeed, this Court has warned that "[d]efining 'reasonable doubt' is a hazardous undertaking because it seems the more said about it to the jury, the less protection that concept provides the accused." State v. Francis, 151 Vt. 296, 302, 561 A.2d 392, 396 (1989). When a court elects to define the term "beyond a reasonable doubt," however, the definition must be commensurate with "utmost certainty," as the U.S. Supreme Court established in In re Winship. 397 U.S. at 363; see, e.g., Cage, 498 U.S. at 41 ("It is our view, . . . that the instruction at issue was contrary to the 'beyond a reasonable doubt' requirement articulated in Winship."); Victor, 511 U.S. at 6 ("The constitutional question in the present cases, . . . is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard."); Brown v. Greene, 577 F.3d 107, 111 (2d Cir. 2009) ("If there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the Winship standard, then the charge is constitutionally deficient." (quotation omitted)).

¶ 22. Under this standard, the trial court's use of the term "great certainty" to define "beyond a reasonable doubt" was error. See Winship, 397 U.S. at 364 (explaining "[i]t is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being condemned" and, therefore, "every individual going about his ordinary affairs [must] have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty"); Welch, 2020 VT 74, ¶ 8 (describing "there must be an error" as first factor of plain-error analysis

9

(quotation omitted)).  As commonly understood, the term "utmost" is defined as "of the greatest or highest degree."  Utmost, Merriam-Webster Online Dictionary, https://www.merriam-webster .com/dictionary/utmost [https://perma.cc/B8K4-9XPT].  The term "great" is defined as "remarkable in magnitude, degree, or effectiveness."[4]  Great, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/great [https://perma.cc/6GQL-J74E].  Just as "great certainty" is not synonymous with "greatest certainty," a "remarkable degree of certainty" is not synonymous with the "highest degree of certainty."  Consequently, the trial court's use of the term "great certainty" to define "beyond a reasonable doubt" did not meet the requirements of due process.  See Victor, 511 U.S. at 29 (Blackmun, J., concurring) ("Any jury instruction defining 'reasonable doubt' that suggests an improperly high degree of doubt for acquittal or an improperly low degree of certainty for conviction offends due process.").

¶ 23.    Indeed, our conclusion in this case that the term "great certainty" is insufficient conforms with other prominent federal cases applying the Winship requirement.  In Cage v. Louisiana, the U.S. Supreme Court considered a jury instruction that defined reasonable doubt as "doubt as would give rise to a grave uncertainty" and "an actual substantial doubt."  498 U.S. at 40.  The Court examined the plain meaning of the terms "grave" and "substantial" and determined that, when read in parallel, the terms "suggest[ed] a higher degree of doubt than is required for acquittal under the reasonable-doubt standard."  Id. at 41.  Accordingly, the Court concluded that the instruction "allow[ed] a finding of guilt based on a degree of proof below that required by the Due Process Clause."  Id.  Applying that reasoning to the instant case, the term "great," like the terms "substantial" and "grave," suggests a degree of doubt that would allow a finding of guilt based on a degree of proof below what is required by the Due Process Clause.  See id.

---

[4]  Other definitions include "notably large in size" and "large in number or measure."  Great, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/great [https://perma.cc/6GQL-J74E].

¶ 24.    Similarly, in <u>Victor v. Nebraska</u>, the U.S. Supreme Court again considered the term "substantial doubt" in jury instructions.  <u>Victor</u>, 511 U.S. at 18.  The relevant instruction stated, "[a] reasonable doubt is an <u>actual and substantial doubt</u> reasonably arising from the evidence . . . as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture."  <u>Id</u>.  The Court agreed with the defendant's argument that the term "substantial doubt" could problematically "overstate[] the degree of doubt necessary for acquittal."  <u>Id</u>. at 19.  However, the Court pointed out that the charge at issue distinguished an "actual and substantial doubt" from one "arising from mere possibility, from bare imagination, or from fanciful conjecture."  <u>Id</u>. at 20.  It concluded that the instruction did not violate the defendant's constitutional rights because, in the context of those instructions, the term "substantial" merely "inform[ed] the jury only that a reasonable doubt is something more than a speculative one."  <u>Id</u>.[5]  The Court also explained "[i]n any event, the instruction provided an alternative definition of reasonable doubt: a doubt that would cause a reasonable person to hesitate to act," which "is a formulation [the U.S. Supreme Court had] repeatedly approved."  <u>Id</u>.

¶ 25.    Accordingly, this Court's reasoning in <u>Levitt</u> that any diminishment of the State's burden due to an erroneous instruction could be balanced by "emphasis upon the presumption of innocence," the absence of "further attempts to define the term," and "the weight jurors should attach to any doubt they feel, even if it cannot be articulated," was an error.  2016 VT 60, ¶ 13.

¶ 26.    Both in this case and in <u>Levitt</u>, the relevant portion of the jury instructions—"[t]o say that you believe something beyond a reasonable doubt is to say that you are convinced of it with great certainty"—cannot be interpreted but to decrease the level of certainty required for conviction from "beyond a reasonable doubt" and "utmost certainty" to something less.  In both

---

⁵ In <u>Victor</u>, the Court distinguished <u>Cage</u> by acknowledging that "the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard" but also explained that the Court "did not hold that the reference to substantial doubt alone was sufficient to render the instruction unconstitutional."  <u>Id</u>. (quotation omitted).

cases, the instructions in their entirety did not include other language distinguishing, altering, or otherwise defining "beyond a reasonable doubt."[6] In <u>Levitt</u>, this Court reasoned that any diminishment to the term was balanced, among other things, by "repeated references to the reasonable doubt standard without further attempts to define the term." <u>Id</u>. We cannot continue to agree with that reasoning. Once an incorrect definition of "beyond a reasonable doubt" was used by the trial court, without more, that error could not be mitigated by mere repetition of the incorrectly defined term. Indeed, we "must assume that the jurors followed the instructions given them by the trial court," which, requires that we presume the jury applied the definition provided to them by the court and did not alter their understanding of the already-defined term when the term was repeated by the court. <u>State v. Barrett</u>, 132 Vt. 369, 375, 320 A.2d 621, 625 (1974). Ultimately, because "[w]e presume that jurors follow the law as set forth in the instructions given to them," <u>State v. Webster</u>, 2017 VT 98, ¶ 22, 206 Vt. 178, 179 A.3d 149, and because the instructions told the jury to apply an unconstitutional standard, we conclude that "there is a reasonable likelihood that the jury . . . applied the challenged instruction in a way that violat[ed] the Constitution," <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991) (quotation omitted). See <u>Welch</u>, 2020 VT 74, ¶ 8 (describing plain error in jury instructions when charge "undermines our confidence in the verdict" (quotation omitted)).

¶ 27. We conclude that the erroneous jury instruction here unconstitutionally affected and interfered with defendant's constitutional rights. See <u>id</u>. (describing third factor of plain error

---

[6] The instructions later included the following language: "[a] reasonable doubt may arise from the evidence or from the lack of evidence" and instructed the jurors to "ask yourselves whether on the basis of your reason and judgment, you have a reasonable doubt about the matters I have instructed you to decide." Additionally, the instructions explained: "[y]ou must find the defendant not guilty when you have a reasonable doubt, even if you believe he is probably guilty"; "[y]ou may find him guilty only if you have no reasonable doubt;" and, later, "[u]nder no circumstances may a guilty verdict be based upon conjecture or suspicion." Despite the repetition of the term "beyond a reasonable doubt," this language did not provide any alternative definition, or distinguish, alter, or otherwise explain the degree of doubt required. Instead, it reinforced that "beyond a reasonable doubt" meant what the trial court said it did when it defined the term as "great certainty."

analysis as "the error must affect substantial rights and result in prejudice to the defendant" (quotation omitted)).

¶ 28. The State asserts that, even if this Court holds that the jury instruction was an error, the error was not "obvious," and therefore not plain. See id. (explaining factors of plain-error analysis, including "the error must be obvious" (quotation omitted)); see also State v. Koons, 2011 VT 22, ¶ 13, 189 Vt. 285, 20 A.3d 662 ("A plain error is one that is clear or obvious under existing law."); U.S. v. Olano, 507 U.S. 725, 734 (1993) (" 'Plain' is synonymous with 'clear' or, equivalently, 'obvious.' "). According to the State, this Court's decision in Levitt forecloses a conclusion that the error is obvious. 2016 VT 60, ¶ 13 (concluding "any potential diminishment of the State's burden" by defining "beyond a reasonable doubt" as "great certainty" was balanced by remainder of instructions and therefore instructions did not amount to plain error when viewed as whole).

¶ 29. We conclude that the jury-instruction error was obvious for purposes of the plain-error assessment. Although Levitt found no plain error, it certainly made clear that "attempting to define reasonable doubt is a 'hazardous undertaking,' " and explicitly "discourage[d] trial judges from trying such an explanation." Id. ¶ 14 (quoting Francis, 151 Vt. at 302, 561 A.2d at 396). The decision also cautioned that absent the specific context, specific instruction, or a cogent objection, a similar definitional explanation may be an error. Id.

¶ 30. Levitt is not the only case that has included such a warning. Indeed, both this Court and the U.S. Supreme Court have frequently warned that "[d]efining 'reasonable doubt' is a hazardous undertaking because it seems the more said about it to the jury, the less protection that concept provides the accused." Francis, 151 Vt. at 302, 561 A.2d at 396; see also McMahon, 158 Vt. at 641, 603 A.2d at 1128 (same); State v. Haskins, 2016 VT 79, ¶ 35, 202 Vt. 461, 150 A.3d 202 (same); State v. Redmond, 2020 VT 36, ¶ 39, 212 Vt. 242, 234 A.3d 958 (same); Miles v. United States, 103 U.S. 304, 312 (1880) ("Attempts to explain the term 'reasonable doubt' do not

13

usually result in making it any clearer to the minds of the jury."); Holland v. United States, 348 U.S. 121, 140 (1954) (explaining attempts to define "beyond a reasonable doubt" may lead to jury confusion).

¶ 31.   Furthermore, because this is a federal constitutional question, federal law is controlling and the standard is clear.  See Koons, 2011 VT 22, ¶ 13 ("A plain error is one that is clear or obvious under existing law.").   Indeed, "[o]n questions arising under the Federal Constitution decisions of the Supreme Court of the United States are controlling upon this Court." State v. Scampini, 77 Vt. 92, 121, 59 A. 201, 210 (1904); see also State v. Prouty, 94 Vt. 359, 365, 111 A. 559, 562 (1920) (explaining where issue concerned violation of due process pursuant to federal Constitution, "as to that question, [this Court is] controlled by the decisions of the Federal Supreme Court").   The U.S. Supreme Court has set a firm benchmark for jury instructions that define "beyond a reasonable doubt."   See Winship, 397 U.S. at 364.   Clear federal precedent also explains that any deviation below that standard violates a defendant's constitutional rights.  See Victor, 511 U.S. at 20; Cage, 498 U.S. at 41.   In fact, the U.S. Supreme Court has explained that where an instructional error makes it impossible to determine whether a jury has found a defendant guilty beyond a reasonable doubt, this "vitiates all the jury's findings."  Sullivan v. Louisiana, 508 U.S. 275, 281 (1993) (emphasis omitted).   This firm federal precedent, along with this Court's acknowledgement in Levitt that the term may "diminish" the State's constitutionally required burden, places the constitutionality of the relevant definition into question.

¶ 32.   Our reasoning in State v. Judkins is relevant to this obvious-error analysis.  161 Vt. 593, 594, 641 A.2d 350, 351-52 (1993) (mem.).   In Judkins, we approached the obvious-error analysis by asking whether the trial court should have foreseen a future decision from this Court holding that warrantless electronic monitoring violated Chapter I, Article 11 of the Vermont Constitution.   Id. (citing State v. Blow, 157 Vt. 513, 520, 602 A.2d 552, 556 (1991)).   We considered reasoning from other state courts analyzing their own constitutions in addition to U.S.

14

Supreme Court precedent. Id. at 594, 641 A.2d at 352. We concluded that our decision had not been foreseeable to the trial court—and therefore did not rise to the level of "obvious error"—because "almost without exception, the jurisdictions that considered the same issue," including the U.S. Supreme Court, had come to the opposite conclusion. Id. We noted that "[t]wenty-five states had adopted the federal approach" and "[o]nly two" had agreed with this Court's ultimate conclusion. Id.

¶ 33. The inverse is true here. In this case, we consider whether it was foreseeable or whether the court "should [have] easily recognize[d]" that, on a federal constitutional issue, this Court would conclude that federal precedent controls and overrides our precedent. Id. at 594, 641 A.2d at 351 (quotation omitted); see also Koons, 2011 VT 22, ¶ 13 ("A plain error is one that is clear or obvious under existing law."). We conclude that our decision to overturn the relevant portions of Levitt was foreseeable. In addition to the analysis laid out above, it is relevant that no other state or federal Court has affirmed the use of "great certainty" to define "beyond a reasonable doubt" in jury instructions. See, e.g., 75A Am. Jur. 2d Trial § 1103 (2026) (citing only Vermont caselaw when describing use of "great certainty" in definition of "beyond a reasonable doubt" standard). In fact, the Tenth Circuit has used "great certainty" to describe the clear and convincing evidence standard; in White v. American Airlines, Inc., the Tenth Circuit explained that "the clear and convincing evidence standard applies to . . . areas of the law, where a need for great certainty is required." 915 F.2d 1414, 1421 (10th Cir. 1990) (quotation omitted).

¶ 34. Accordingly, and considering all this together, we conclude that the trial court should have been "on notice" of the error in its jury instruction. Judkins, 161 Vt. at 594, 641 A.2d at 351-52 (considering whether holding was "otherwise so transparent as to put the trial court on notice" in plain-error analysis). The second factor in the plain error analysis is sufficiently met.

¶ 35. Lastly, we consider whether the error implicates "the fairness, integrity or public reputation of judicial proceedings." Welch, 2020 VT 74, ¶ 8 (quotation omitted). We conclude

15

that it would be unfair to defendant and harmful to the public reputation of Vermont's judicial system to allow a definition of the beyond-a-reasonable-doubt standard in direct contravention of the requirements outlined in Winship. Cf. United States v. Marcus, 560 U.S. 258, 265-66 (2010) (holding that "an error that does not affect the jury's verdict does not significantly impugn the fairness, integrity, or public reputation of the judicial process" (quotation omitted)). We decline to allow such an error to continue and, consequently, overrule the relevant portions of Levitt and its progeny. See State v. Shores, 2025 VT 62, ¶ 27, __ Vt. __ , 350 A.3d 471 (explaining we "do not lightly overrule precedent" but "at the same time we are not slavish adherents to prior decisions" (quotation omitted)).

¶ 36. We hold that defining "beyond a reasonable doubt" as "great certainty" is plain error, and, consequently, we must reverse and remand.

### III. Prior Bad-Act Evidence

¶ 37. Finally, defendant argues that the court abused its discretion when it improperly admitted evidence of defendant's prior bad acts. Because we reverse and remand on the constitutional issue raised by defendant, we need not and do not address this issue.

Reversed and remanded for a new trial.

FOR THE COURT:

_____
Associate Justice

16