NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 33

No. 2016-280

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Criminal Division |
| | |
| Jeffrey Davis | November Term, 2017 |

A. Gregory Rainville, J.

James Pepper, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Joshua O'Hara, Appellate Defender, Montpelier, for
  Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Davenport, Supr. J. (Ret.),
          Specially Assigned

¶ 1.    **CARROLL, J.**    Defendant Jeffrey Davis appeals his conviction for financial exploitation of a vulnerable adult under 13 V.S.A. § 1380(a) following a jury trial. He raises four arguments on appeal. His first two arguments arise from the trial court's denial of his motion for a judgment of acquittal and the sufficiency of the State's evidence. He also argues that the court's instructions to the jury were erroneous, and that the court erroneously permitted the victim's guardian, rather than the victim, to testify during sentencing. We affirm.

¶ 2.    In 1995, defendant's mother and father had an attorney draft a conditional power of attorney document. The terms of the power of attorney were general, granting the attorney-in-fact "full power to act for [defendant's mother and in defendant's mother's] name in all matters and to do all things which [defendant's mother] could do if personally present." It granted the

attorney-in-fact the authority to deposit, withdraw, and invest defendant's mother's money, and to sign checks and drafts on her behalf. The power of attorney named defendant's father as primary attorney-in-fact and listed conditions that had to be met before defendant's father could assume this role. The power of attorney named defendant as secondary attorney-in-fact, and, again, the document required that conditions be met before defendant could assume his role as his mother's attorney-in-fact. Specifically, defendant was required to attach one of three documents to the power of attorney: a statement signed by defendant's father to the effect that he was unable or unwilling to serve as defendant's mother's attorney-in-fact, a statement signed by a medical doctor stating that defendant's father was unable or unwilling to serve as attorney-in-fact, or a copy of defendant's father's death certificate. There was no evidence presented showing that any of these conditions precedent were ever met.

¶ 3. Defendant's father died in 2006. Upon his death, defendant's mother moved into an assisted living facility, eventually settling at an elder living facility in Colchester. Until 2014, she controlled her own finances. Her monthly income from Social Security and her husband's pension were directly deposited into a checking account jointly owned with defendant. She paid her rent and other expenses from this checking account.

¶ 4. In early 2014, defendant's mother suffered a fall. An employee of the elder living facility testified that, at this point, defendant became more involved in his mother's care. Employees of the elder living facility and defendant's mother's doctor testified that around this time defendant began to represent himself as his mother's attorney-in-fact. It is undisputed that at this time defendant began controlling his mother's finances, including taking her checkbook and credit card and redirecting her mail for delivery at his address.

¶ 5. Within a few months, staff at the elder living facility began to notice anomalies in the payment of defendant's mother's rent. Until March 2014, the rent was withdrawn directly from the joint account shared by defendant and his mother. Beginning in April, the rent could not be withdrawn because the account held insufficient funds. In August, defendant wrote a check on

2

the joint account for payment of all overdue rent. In September, the rent went unpaid again until December. At that time, defendant wrote a check from the joint account for the unpaid rent. This check was returned for insufficient funds. The rent subsequently went unpaid again through March of 2015. Two staff members at the elder living facility separately confronted defendant about the validity of the power of attorney. Staff later initiated eviction proceedings and, in December 2014, made a report to Adult Protective Services.

¶ 6. Adult Protective Services began an investigation. The investigator testified that during the course of his investigation he told defendant that the investigation would cease if he paid the overdue rent. Defendant gave the elder living facility a check for all back rent, which was, like defendant's prior rent check, returned for insufficient funds. Eventually, Adult Protective Services petitioned the court to appoint a guardian to take control of defendant's mother's finances. The court granted the petition and appointed a temporary guardian, who then became defendant's mother's attorney-in-fact. In April 2015, the temporary guardian was named as defendant's mother's permanent guardian.

¶ 7. Adult Protective Services also investigated defendant's mother's financial records. These records were admitted in full during defendant's trial. They showed that at the end of January 2014, the last month during which defendant's mother paid her expenses herself, the joint checking account shared with defendant had a balance of over twelve thousand dollars. The January transaction history for the account showed deposits for defendant's mother's Social Security and defendant's father's pension. There were withdrawals for rent, groceries, healthcare, and other miscellaneous daily living expenses. The ending balance in February was just under two thousand dollars. The February transaction history showed the same deposits as those in January, as well as many of the same expenditures. The transaction history also showed a substantial payment to a car dealership made via cashier's check. At the end of March, the account balance was less than one dollar. According to the account transaction history, defendant made two large deposits in March and July 2014, in the amount of three thousand dollars and just over six thousand

3

dollars. The only other deposits were from defendant's mother's Social Security and defendant's father's pension. The account balance was negative at the end of August 2014, and the account was eventually closed in March 2015. The transaction history showed numerous withdrawals and charges inconsistent with the pattern of transactions prior to defendant taking control of the account in February 2014.

¶ 8. While the Adult Protective Services investigation was ongoing, in January 2015, defendant contacted an attorney and informed the attorney that he was being told that he could not speak on his mother's behalf unless he was her attorney-in-fact. The attorney reviewed the 1995 power of attorney executed by defendant's mother and then drafted a new document for defendant that, if signed by his mother, would render defendant her attorney-in-fact. Defendant's mother signed this document before a notary on January 22, 2015. At the urging of the Adult Protection Services investigator, defendant's mother signed another document on February 20, 2015, which revoked any power of attorney and authority to act previously conferred to defendant.

¶ 9. Adult Protective Services eventually referred the matter to local police. In an information dated March 7, 2016, defendant was charged with exploiting a vulnerable adult under 13 V.S.A. § 1380(a). In relevant part, this statute provides that: "No person shall willfully use, withhold, transfer, or dispose of funds or property of a vulnerable adult, without or in excess of legal authority, for wrongful profit or advantage." Id. The information specifically charged defendant with being "a person who willfully withheld funds of a vulnerable adult, to wit, [defendant's mother], by not paying her rent at [the elder living facility], without legal authority, for wrongful profit or advantage, and such money, funds, or property exceed 500 dollars in value." A jury convicted defendant after a two-day trial.

¶ 10. The trial court ordered a presentence investigation report following delivery of the jury's verdict. The initial report did not include a victim-impact statement from defendant's mother; instead, defendant's mother's guardian submitted a statement on her behalf. Defendant moved to exclude the guardian's statement from the presentence investigation report and to bar

4

her from testifying at the sentencing hearing. Defendant requested that instead the court permit his mother to testify on her own behalf. The State opposed this motion. The court denied defendant's motion and permitted the guardian to speak on behalf of defendant's mother. The court subsequently imposed a suspended sentence of one to five years, with six months to serve. This appeal followed.

¶ 11. Defendant argues first that the trial court erred when it denied his motion for a judgment of acquittal. Specifically, defendant argues that the State did not present sufficient evidence to support conviction on two necessary elements—that defendant acted without legal authority and that he acted willfully. Defendant also argues that the trial court's instruction to the jury regarding whether defendant acted without legal authority was erroneous. And finally, defendant argues that the trial court's denial of his motion to bar the guardian's written statement and testimony from sentencing consideration was in error. We begin with defendant's arguments related to his motion for a judgment of acquittal.

¶ 12. Defendant moved for a judgment of acquittal at the close of the State's evidence, arguing that the evidence did not establish that the power of attorney was invalid as to defendant, and that the power of attorney did not create a legal obligation in the attorney-in-fact to act. In its denial of defendant's motion, the court characterized the validity of the power of attorney as a "red herring," a nonessential element of the State's case, because, the court concluded, even a valid power of attorney would not eviscerate the statutory prohibition against withholding funds.* The court went on to conclude that there was insufficient evidence to find the power of attorney legitimately executed as to defendant and that, even if the power of attorney was valid as to

---

* As explained below, we agree with the trial court that even with a validly executed power of attorney, defendant would not have the authority to take his mother's checkbook and other means of paying rent while failing to pay her rent. See supra, ¶ 16. We analyze this case as if the efficacy of the power of attorney was central to the State's case because the parties and trial court framed the case that way.

defendant, there was "no evidence to support the idea that [defendant] could legitimately withhold rent."

¶ 13.    On appeal, defendant echoes his argument below.  He essentially asserts that the State presented insufficient evidence to enable jurors to convict on the necessary element that defendant acted without legal authority, and that, because there was insufficient evidence of the invalidity of the power of attorney, the State was required to prove that the power of attorney document itself created a legal obligation in the attorney-in-fact to pay rent.  The State presented no evidence regarding any legal obligation to act in the power of attorney and, therefore, defendant argues his conviction must be vacated.

¶ 14.    Looking at defendant's sufficiency argument, we conclude that the trial court correctly found that the evidence was sufficient to create a question for the jury.  We review a trial court's denial of a motion for a judgment of acquittal according to the same standard as that employed by the trial court: "[W]e view the evidence in the light most favorable to the State, excluding any modifying evidence, and determine whether it is sufficient to fairly and reasonably convince a trier of fact that the defendant is guilty beyond a reasonable doubt."  State v. Cameron, 2016 VT 134, ¶ 5, __ Vt. __, 163 A.3d 545 (quotation omitted).  This standard is deferential to the role of the jury—it recognizes that trial and appellate courts should hesitate to place themselves in the position of jurors.  Therefore, "courts should grant a judgment of acquittal only where there is no evidence to support a guilty verdict."  Id. (emphasis added); State v. Johnson, 2013 VT 116, ¶ 26, 195 Vt. 498, 90 A.3d 874 ("A judgment of acquittal is proper only if the prosecution has failed to put forth any evidence to substantiate a jury verdict.").

¶ 15.    In this case, several witnesses testified regarding the power of attorney, including the attorney who originally drafted the document and the attorney defendant approached for legal advice during the Adult Protective Services investigation.  Both attorneys testified that the original document conferred status as attorney-in-fact only upon completion of certain conditions.  And though the attorney who originally drafted the document clearly stated that he did not have any

6

knowledge regarding completion of the conditions, other witnesses testified that the power of attorney did not appear to be validly executed. While these witnesses were not attorneys, determining whether one of the three conditions required to render defendant attorney-in-fact had been satisfied—that is, whether one of three documents was attached to the power of attorney—required no special knowledge. Jurors also had and could examine the power of attorney document itself; the State entered it as an exhibit. Given that the legal execution of the power of attorney depended upon attaching one of three documents, and that the State presented both testimony and exhibits in support of the conclusion that the power of attorney was not validly executed, the trial court correctly found that evidence had been presented that could support a guilty verdict on this element. See Johnson, 2013 VT 116, ¶ 26.

¶ 16. Because we conclude that the court correctly denied defendant's motion for a judgment of acquittal on this element, we need not decide whether defendant's argument that the document did not create a legal obligation in the attorney-in-fact to pay rent has any merit. This argument would only become relevant if there was sufficient evidence to conclude that the power of attorney legitimately conveyed authority on defendant. Were that the case here, the State would, assuming it stuck to its theory of the case, perhaps need to present evidence regarding any obligation to act in the power of attorney document itself. It is worth mentioning, however, that the statute upon which defendant bases his argument, 14 V.S.A. § 3506, by its plain language cannot be read in isolation. Section 3506(a) states that "[e]xcept for the duties imposed on agents by this subchapter and except as provided in subsections (b) and (c) of this section, an agent has no duty to exercise any authority granted in a power of attorney." The preceding statute, 14 V.S.A. § 3505(a), part of the same subchapter, states that "[t]he agent shall have a fiduciary duty to the principal. The fiduciary duty of the agent requires that the agent, in the performance of his or her duties, shall . . . act in good faith and in the interest of the principal." Thus, the fiduciary duty of § 3505(a) remains in place regardless of the terms of a power of attorney and despite § 3506(a)'s statement that, as defendant reads the statute, an attorney-in-fact has no obligation to act. For this

7

reason, whether defendant had authority to act pursuant to the power of attorney is arguably beside the point, as defendant's general authority to act under a power of attorney would not confer on him the authority to sequester his mother's checkbooks while failing to pay her rent.

¶ 17. Defendant raises a second sufficiency argument related to the element that he acted willfully. Defendant argues on appeal that § 1380(a)'s intent element—willfulness—extends to all elements of the charge, requiring that the State prove he willfully withheld funds and that he willfully acted without legal authority. See State v. Richland, 2015 VT 126, ¶ 8, 200 Vt. 401, 132 A.3d 702 (explaining that "[w]hen the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears," and holding "knowingly" applied to each element of offense (quotation omitted)). The corollary of this argument is that the State presented no evidence to support finding that defendant willfully acted without legal authority.

¶ 18. Defendant did not raise this argument in his motion for a judgment of acquittal and it is, therefore, waived on appeal. State v. Jackson, 2008 VT 71, ¶ 21, 184 Vt. 173, 956 A.2d 1126 (holding defendant waived argument that State presented insufficient evidence on one element of offense because defendant's motion for judgment of acquittal argued only that State presented insufficient evidence on different element of offense); State v. Winters, 136 Vt. 469, 470, 392 A.2d 429, 430 (1978) (holding "where the claim of insufficiency of the evidence to support the charge is not presented to the lower court, at the end of the trial by a motion under the rule for judgment of acquittal, the issue is not preserved for appellate review"); State v. Bressette, 136 Vt. 315, 317, 388 A.2d 395, 396 (1978) (declining to review argument that State presented insufficient evidence to convict where argument was not raised below and declining to review under V.R.Cr.P. 52(b) because element of charge "was in fact the subject of substantial evidentiary dispute").

¶ 19. That said, defendant argues that this argument is not waived because, in its ruling on defendant's motion for a judgment of acquittal, the trial court considered, sua sponte, whether

8

sufficient evidence had been presented on each element of the offense such that the charge could reach the jury. Regarding the mental element, the court stated:

> [The sixth element], that [defendant] did so willfully. The court doesn't see any other way to properly interpret the evidence before it, other than that he acted willfully. And he expressed his intention more than once that what he was doing was what he desired to do and was his choice, that he thought he had the right to control his mother's funds, and he was going to control them. It wasn't by accident, it wasn't by mistake.

It is unclear, at best, whether the trial court was evaluating the evidence presented by considering the mental element relative to each of the necessary elements of the charge against defendant or whether it considered the mental state only in relation to the withholding of funds. Based on the statement above, we simply cannot say that when the trial court reviewed the elements of the offense, it understood that defendant had any particular objection to the weight of the evidence on the willfulness element. Defendant did not raise this issue below. Thus, despite the trial court's sua sponte consideration of the evidence on each element of the charge, the purpose of our preservation rules is still not satisfied, and we cannot, in this case, consider defendant's argument preserved for appeal. See State v. Discola, 2018 VT 7, ¶ 16, __ Vt. __, __ A.3d __ (explaining "[t]his Court applies the preservation requirement in Rule 29 with reference to the Rule's purpose").

¶ 20. We have stated that the "plain language [of Rule 29] provides for multiple opportunities for acquittal, and is thus clearly intended to offer defendants flexibility in challenging the sufficiency of the evidence at trial." Johnson, 2013 VT 116, ¶ 25. Accordingly, the liberal application of Rule 29 has supported preservation even where a defendant does not strictly comply with the Rule's provisions concerning when a motion for judgment of acquittal should be raised before the trial court. See, e.g., id.; State v. Brooks, 163 Vt. 245, 254, 658 A.2d 22, 28 (1995). But this liberalization cannot extend so far as to permit preservation when a motion is never made, and it is unclear on what grounds, or under what legal theory, the trial court found sufficient

9

evidence concerning an element of an offense. For this reason, defendant's argument that the State failed to present sufficient evidence that he willfully acted without legal authority is waived.

¶ 21. Defendant argues next that the trial court's jury instruction concerning the element that he acted without legal authority constituted reversible error. Defendant concedes that he did not object to the disputed instruction and that our review is for plain error. The trial court instructed jurors as follows:

> For the fourth essential element the State must prove beyond a reasonable doubt that [defendant] had no legal authority to withhold those funds of [his mother]. Legal authority is defined as being authorized by law.

Defendant argues that because the State's evidence focused on whether the power of attorney was validly executed as to defendant, the court should have instructed jurors regarding how a power of attorney is validly executed, both under the common law at the time the power of attorney in this case was drafted and under the current statutory framework governing powers of attorney. We hold that this instruction was erroneous, but that this error is not grounds for reversal.

¶ 22. This Court reviews jury instructions "in their entirety, assigning error only when the entire charge undermines confidence in the verdict." State v. Lambert, 2003 VT 28, ¶ 14, 175 Vt. 275, 830 A.2d 9. A plain error review of jury instructions requires us to consider the instructions "in light of the record evidence as a whole and [to] determine if any error would result in a miscarriage of justice." State v. Herrick, 2011 VT 94, ¶ 18, 190 Vt. 292, 30 A.3d 1285. This involves two critical inquiries: whether an error "affected defendant's substantial rights and caused prejudice," and whether an error had a "serious effect on the fairness of the proceeding." State v. Bolaski, 2014 VT 36, ¶ 29, 196 Vt. 277, 95 A.3d 460.

¶ 23. The trial court's instruction here was undoubtedly circular—in effect, the trial court instructed jurors that they could find that defendant acted without legal authority if they found that he did not have legal authority to act. The instruction did not attempt to define "legal authority" or to provide any context within which the jury could consider defendant's legal authority to act.

10

But when considered "in light of the record evidence as a whole," the erroneous instruction does not require reversal. Herrick, 2011 VT 94, ¶ 18. The central issue in this case concerned whether the power of attorney granted defendant authority as his mother's attorney-in-fact. That issue turned on whether the conditions under which the power of attorney became effective were executed. As explained above, the State presented testimony from the power of attorney's drafter and the attorney defendant approached for advice regarding the specific conditions attached to the power of attorney. The State also admitted the power of attorney document itself as an exhibit. Thus, the issue was clearly framed for the jury—they could find that defendant was his mother's attorney-in-fact, and had legal authority, if they found the power of attorney's conditions had been met. Given the clear and reasonably simple issue here, as well as the witness testimony and the fact that the jurors could independently review the admitted power of attorney document, we see no prejudice to defendant in the trial court's insufficient instruction.

¶ 24. Finally, defendant asks us to remand for reconsideration of his sentence because the trial court erroneously ruled defendant's mother incompetent and, based on that ruling, permitted defendant's mother's guardian to enter a statement and testify on behalf of defendant's mother during the presentence investigation. Shortly before his sentencing, defendant moved to take testimony from his mother during sentencing, arguing that his mother was the victim in the case. See 13 V.S.A. § 5321(a)(2) (stating that the "victim of a crime" has right to "appear, personally, to express reasonably his or her views concerning the crime, the person convicted, and the need for restitution"). Defendant further moved to exclude the guardian's statement from sentencing consideration.

¶ 25. The trial court denied defendant's motion, stating first that if defendant's mother "independently, or through her guardian, express[ed] an interest in testifying or making a statement at defendant's sentencing, the court would certainly be willing to accommodate her. As the victim, [defendant's mother] ha[d] a right to make a statement, if she so desire[d]." But, as the court noted, defendant's mother had not expressed an interest in testifying—rather, defendant in effect sought

11

leave to contact his mother to ask her to testify during sentencing. The court thus considered defendant's request within this context and ruled that several factors supported denying it. First, defendant's post-conviction conditions of release included a no-contact provision relative to his mother. This provision was lifted after defendant's mother expressed a desire to have contact with defendant but was imposed again after defendant several times contacted his mother and, as the court stated, "told her that he was going to jail and that she had ruined his life." This contact had negatively affected defendant's mother's overall well-being and, on this basis, the court ruled that neither defendant nor his attorney could contact defendant's mother concerning testimony during sentencing.

¶ 26. Regarding defendant's motion to exclude the guardian's statement, the court concluded that because defendant's mother had been found to be a vulnerable adult for purposes of defendant's conviction, she was also incompetent to testify during sentencing and her guardian would be permitted to make a statement on her behalf. Defendant appeals this ruling. We conclude that the trial court erred when it equated the finding that defendant's mother was a "vulnerable adult" for purposes of conviction with incompetence for purposes of sentencing, but that this error does not constitute an abuse of discretion in sentencing because the trial court did not rely on the guardian's statement in its final sentencing determination.

¶ 27. A presentence investigation report "shall include the comments or written statement of the victim, or the victim's guardian or next of kin if the victim is incompetent or deceased." 28 V.S.A. § 204(e). A victim is defined as "a person who sustains physical, emotional, or financial injury or death as a direct result of the commission or attempted commission of a crime." 13 V.S.A. § 5301(4). According to this definition, and as defendant argued below and the trial court acknowledged, defendant's mother is the victim of defendant's crime. Thus, her guardian may be permitted to speak in her place at sentencing only if defendant's mother, who is not deceased, is found incompetent for purposes of 28 V.S.A. § 204(e). Incompetence is not defined in this statute.

12

¶ 28. In general, we construe statutes according to their plain language and assume that the Legislature is "aware of the words it used and their meaning." State v. Papazoni, 159 Vt. 578, 580, 622 A.2d 501, 503 (1993). Incompetent is defined as "unqualified to testify." Incompetent Black's Law Dictionary (10th ed. 2014). Under Vermont Rule of Evidence 601(a) "[e]very person is competent to be a witness except as otherwise provided by statute or in" the rules of evidence. Rule 601(b) carves out two exceptions to this generality:

> A person is disqualified to be a witness if the court determines that (1) the proposed witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him, or (2) the proposed witness is incapable of understanding the duty of a witness to tell the truth.

Putting the two sections of this Rule together leads to the straightforward conclusion that a witness is incompetent if he or she either cannot express him or herself regarding the issue to which he or she is testifying or cannot understand a witness's obligation of truthfulness. On the other hand, the relevant definition of "vulnerable adult" is a person over eighteen who

> is impaired due to . . . infirmities of aging . . . that results in some impairment of the individual's ability to . . . provide for his or her own care without assistance, including the provision of food, shelter, clothing, health care, supervision, or management of finances; or . . . protect himself or herself from abuse, neglect, or exploitation.

13 V.S.A. § 1375(8)(D)(i)-(ii). It should go without saying that an age-related impairment in a person's ability to, for example, manage his or her own finances does not foreclose the possibility that the person may still be capable of expressing himself or herself regarding a matter upon which he or she is called to testify. Thus, a person may be found to be a "vulnerable adult" and the victim of a charge under 13 V.S.A. § 1380, but still competent to testify according to V.R.E. 601 and for the purposes of sentencing consideration under 28 V.S.A. § 204(e).

¶ 29. The court's decision regarding whether the guardian should be permitted to speak on defendant's mother's behalf does not consider the meaning of "incompetence" for purposes of testifying at sentencing. Instead, the court's decision seems to rest on the jury's finding that

defendant's mother was a vulnerable adult for purposes of conviction. But as explained above, these terms are not synonymous, and a finding of vulnerability does not necessarily equate with a finding of incompetence. Absent some consideration of defendant's mother's competence to testify beyond the bald finding that the jury found her to be a vulnerable adult, the trial court's decision is in error.

¶ 30. Despite this error, we see no abuse of discretion in the court's final sentencing decision. State v. Scott, 2013 VT 103, ¶ 20, 195 Vt. 330, 88 A.3d 1173 (explaining that sentencing court "necessarily has broad discretion over what information may be considered in fashioning a just and fair sentence . . . to arrive at a sentence that is both appropriate to the crime and consistent with the purposes of sentencing" (quotation omitted)). "We will affirm a sentence on appeal if it falls within statutory limits, and it was not derived from the court's reliance on improper or inaccurate information." State v. Ingerson, 2004 VT 36, ¶ 10, 176 Vt. 428, 852 A.2d 567 (citation omitted).

¶ 31. The trial court stated at sentencing that the guardian's statement was not necessarily "the crux of [the] sentencing decision," that the statement was just one of the factors the court would consider, and that the final sentencing decision would be based on the evidence presented during trial and during the sentencing hearing. The court went on to consider the various goals of sentencing, concluding that both punitive and deterrent goals required the sentence eventually fashioned. To this end, the court stated that both defendant and the public needed to understand that the crime in this case could not be tolerated:

> We have a society where elderly people, vulnerable people have to depend on other individuals, family members and others. They're forced to. They don't have much choice. And that responsibility is huge and it has to be taken with a great deal of respect and used extremely carefully.

The court went on to explain that it was not going to sentence defendant to the amount of time the court contemplated before the sentencing hearing—that is, the amount contemplated after considering the presentence investigation report, the guardian's statement, and other written

14

submissions. The court never referred to any of the materials submitted before the sentencing hearing in its final sentencing determination, including the guardian's statement. Following the sentencing hearing and witness testimony presented therein, the court imposed a suspended sentence of one to five years, with six months to serve. It is likely, therefore, that the guardian's statement carried little or no weight in the final sentencing determination. Rather, it is reasonable to conclude that the trial court did as promised and relied on the evidence presented during trial and at the sentencing hearing.

¶ 32. Violation of 13 V.S.A. § 1380 is punishable by a maximum sentence of ten years imprisonment. Id. § 1380(c). Defendant's sentence is well below that maximum and the record does not reflect that the trial court based the sentence imposed on either "improper or inaccurate information." Ingerson, 2004 VT 36, ¶ 10. We decline to remand for reconsideration of defendant's sentence.

Affirmed.

FOR THE COURT:

_____

Associate Justice