NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2019 VT 3

No. 2017-294

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Caledonia Unit, |
| | Criminal Division |
| | |
| Corey Regal Jones | October Term, 2018 |

Elizabeth D. Mann, J.

Lisa A. Warren, Caledonia County State's Attorney, and Timothy Hartwell, Law Clerk
  (On the Brief), St. Johnsbury, and David Tartter, Deputy State's Attorney, Montpelier,
  for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Dawn Matthews, Appellate Defender, Montpelier, for
  Defendant-Appellant.


PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1. **CARROLL, J.** Defendant appeals his conviction by jury for dispensing less than 200 milligrams of heroin in violation of 18 V.S.A. § 4233(b)(1). He contends that there was insufficient evidence to prove that he provided drugs to a confidential informant during a controlled purchase and, therefore, the court erred by denying his motion for judgment of acquittal. He also challenges his sentence, arguing that the trial court did not account for the nature and circumstances of the crime. We affirm.

## I. Factual and Procedural Background

¶ 2.     At trial, the State presented evidence of the following facts, taken in the light most favorable to the State.  In summer 2016, Officer Steven Hartwell of the St. Johnsbury Police Department had a female confidential informant[1] working for him.  She had been facing two potential charges.  Hartwell and the informant agreed that if she made ten controlled purchases, the State might decline to pursue these cases against her.  A controlled purchase is an investigative operation in which law enforcement officers surveil an agent working on their behalf as he or she attempts to purchase drugs.

¶ 3.     On August 16, 2016, this informant came to the police station to tell Hartwell that she might be able to make one of these purchases from defendant, an African-American male whom informant knew.  With Hartwell watching her, she telephoned defendant to arrange the purchase.  Hartwell then searched the informant by patting her down and emptying her purse to make sure that she did not have any drugs, money, or weapons.  He found none.  He gave her forty dollars to buy drugs from defendant, and he placed an audio recorder in her purse and turned it on.  This recorded much of what was said in the vicinity of the informant during the operation but did not transmit real-time audio surveillance to the officers.

¶ 4.     Three representatives from the police department observed as the informant attempted to make the purchase from defendant:  Officer Hartwell, Chief of Police Paige, and Captain Gray.  They communicated by radio, attempting to always have at least one of them watching the informant.  The entire operation lasted about one hour.

---

[1]     Law enforcement officers generally refer to police informants as "confidential informants."  However, pursuant to its discovery obligations, after charges are filed, the State is obligated to provide the informant's name to the defendant. Thereafter, the identity of the informant is no longer confidential.

¶ 5.     The informant departed from the police station on foot and walked to a pre-arranged meeting place: 48 Eastern Avenue, an apartment building called the Republican Block.  Hartwell followed, watching her from his car.  He parked across from the hardware store on Eastern Avenue in front of the state office buildings.  Paige had parked on the same side of Eastern Avenue, up the hill, closer to the hardware store than Hartwell.  Gray was parked in the municipal lot at Pearl Street and Eastern Avenue.

¶ 6.     Defendant met the informant outside the Republican Block.  They remained there for ten to twenty minutes, though defendant went back inside the building several times without the informant.  Neither Hartwell, Gray, nor Paige saw a transaction involving the informant occur at this location.

¶ 7.     The informant and defendant then walked across Eastern Avenue toward Federal Street.  In response, Paige moved his observation post to Pearl Street, which connects Eastern Avenue to Federal Street.  From his new position, he could see the informant the entire time that she was on Federal Street, except during the apparent transaction.  After confirming that Paige could see the informant, Hartwell relocated to the same area of Pearl Street as Paige.  Gray also moved his car.  He drove to the other side of the municipal lot, parking behind TD Bank, in the closest row of spaces adjacent to the McDonald's.  He faced the drive-through and Federal Street.  His vehicle was situated near the middle of the lot, as measured from Railroad Street to Pearl Street, so that he could see the corner of Federal and Pearl, unobstructed by hedges that otherwise would have blocked his view.

¶ 8.     Gray watched as defendant walked down Federal Street toward Railroad Street, while the informant stayed behind and waited near Federal and Pearl.  After about twenty minutes, defendant returned.  Gray then saw a handoff between defendant and the informant: they quickly joined hands and then separated, changing directions immediately after touching.  Gray could not see what, if anything, passed between them.  After touching the informant's hand, defendant

3

walked back down the Federal Street hill, and the informant walked up it. From Gray's perspective, the handoff occurred to the right of what used to be Community Bank, on the sidewalk or in the parking lot.

¶ 9.     Gray communicated over the police radio that he had seen an exchange between defendant and the informant. After receiving this message, Paige saw the informant reappear into his view. Paige followed her in his car, watching until Hartwell picked her up. Hartwell drove her back to the police station, and she handed him two small baggies, each about the size of a postage stamp. He booked them into evidence and they later tested positive for heroin. Then Hartwell searched the informant and found that the money he had given to her for the purchase was gone.[2]

¶ 10.     At the close of the State's evidence defendant moved for judgment of acquittal. The trial court denied the motion. Defendant then testified that he and the informant had not exchanged drugs for cash. Rather, he had returned cash to the informant that he had attempted to use—unsuccessfully—to purchase drugs for her. Defendant testified that he kept twenty dollars of the informant's money, which he claimed she owed him.

¶ 11.     After the jury returned a guilty verdict, defendant renewed his motion for judgment of acquittal, which the trial court again denied. The court sentenced defendant to a minimum of 16 months and a maximum of 36 months in prison, with credit for 302 days in pre-trial detention. He appeals the denial of his motion for judgment of acquittal and his sentence.

---

[2]     The informant testified that after listening to the tape recording of that day, she remembered parts of the operation that are consistent with police officer testimony. However, she admitted on cross examination that without the tape recording she had no independent recollection of that day. Although her direct testimony—taken in the light most favorable to the State— provides a modicum of support for the State's theory, it merely corroborates facts already established by the officers' testimony that we must presume true. Her testimony is unnecessary for our sufficiency-of-the-evidence analysis and we do not rely on it.

## II.    Sufficiency of the Evidence

¶ 12.    We review the denial of a motion for a judgment of acquittal using "the same standard as that employed by the trial court: We view the evidence in the light most favorable to the State, excluding any modifying evidence, and determine whether it is sufficient to fairly and reasonably convince a trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Davis, 2018 VT 33, ¶ 14, __ Vt. __, 186 A.3d 1088 (quotation and alterations omitted). A court must enter a judgment of acquittal if the State has presented insufficient evidence to support a conviction. V.R.Cr.P. 29(a). By design, this standard largely defers to the important role of juries in our judicial system. Davis, 2018 VT 33, ¶ 14. Rule 29 only permits trial and appellate courts to grant a motion for judgment of acquittal—and thus remove a case from a jury's consideration— "when there is no evidence to support a guilty verdict." State v. Cameron, 2016 VT 134, ¶ 5, 204 Vt. 52, 163 A.3d 545.

¶ 13.    Here, the State's case relies, to a degree, on circumstantial evidence. A case may rest on direct or circumstantial evidence but that evidence must establish the elements of a crime beyond a reasonable doubt. State v. Kerr, 143 Vt. 597, 603, 470 A.2d 670, 673 (1983). Juries may draw reasonable inferences from circumstantial evidence to decide whether "disputed ultimate facts occurred." State v. Durenleau, 163 Vt. 8, 12, 652 A.2d 981, 983 (1994). But courts cannot allow juries to "bridge evidentiary gaps with speculation." Id. at 12-13, 625 A.2d at 983. In a Rule 29 motion, "[w]hen reviewing a case based largely on circumstantial evidence, the evidence must be considered together, not separately, even if defendant can explain each individual piece of evidence in a way that is inconsistent with guilt." State v. Baird, 2006 VT 86, ¶ 13, 180 Vt. 243, 908 A.2d 475 (quotation omitted).

¶ 14.    Employing the Rule 29 standard we are required to take Captain Gray's testimony—that defendant and the informant touched hands near the corner of Federal Street and Pearl Street, and then immediately turned around and walked in opposite directions—as true.

5

Additionally, where there has been a renewed motion for judgment of acquittal, courts may rely on any information adduced during the defendant's case that supports the sufficiency of the State's evidence. Reporter's Notes, V.R.Cr.P. 29; 6 W. LaFave et al., Criminal Procedure § 24.6(b), at 576 (4th ed. 2015) ("The majority position is that the earlier ruling is 'mooted' or 'rendered harmless' by the later-introduced evidence and the defendant should not receive the windfall of acquittal when his guilt was proven and supported by sufficient evidence."). Defendant's testimony corroborates Gray's assertion that defendant reconvened with the informant and passed an object to her near the corner of Federal and Pearl streets. Moreover, defendant admitted that while the informant waited for him, he telephoned her from inside the home of a drug dealer to tell her that he could not get her preferred drug. The informant asked him to get her any other drug instead. This further supports the State's case.

¶ 15. Taken in the light most favorable to the State, there is significant evidence that supports the inference that defendant knowingly dispensed heroin to the informant: (1) the informant planned a drug purchase from defendant by phone; (2) the police searched the informant and did not find any drugs or cash in her possession before she embarked on making the controlled purchase from defendant; (3) the police gave cash to the informant for the purchase; (4) three members of the police force watched the informant during the operation, and they did not see her engage in conduct that appeared to be a drug transaction with anyone other than defendant; (5) during the controlled purchase, while the informant waited near the corner of Pearl and Federal, defendant phoned her from inside a drug dealer's residence to inform her that her favored drug was not available, and was told by the informant to get her any other drug; (6) defendant returned to Pearl and Federal, approached the informant, they touched hands, pivoted, and walked in opposite directions; (7) upon returning from the operation, the informant had two bags of heroin in her possession and no longer had the cash that the police had given to her. A factfinder could conclude beyond a reasonable doubt, by drawing reasonable inferences and not indulging in

6

unwarranted speculation, that defendant knowingly dispensed the heroin that the police recovered from the informant.[3]  Whether to draw this inference, and thus find defendant guilty, was therefore a question for the jury.[4]  The trial court correctly denied defendant's motion for judgment of acquittal.

### III.    Sentencing

¶ 16.    Defendant urged the trial court to sentence him to a minimum of six months in jail, and a maximum of one year, and to suspend all but thirty days of the sentence.  He also requested credit for the ten months that he had already served while awaiting trial.  He explained that he had reflected on his behavior and he desired treatment for his drug addiction problem.

¶ 17.    In his sentencing memorandum defendant provided the court with statistics on other similar convictions in Vermont.  There were six other sentences issued under 18 V.S.A. § 4233(b)(1) in which a defendant received a split sentence.  The average minimum sentence was 1.2 years; the average maximum sentence was 2.8 years.  And from July to December 2016, twenty-one people were charged with a felony drug crime after having been investigated by the

---

[3]  Defendant argues that the State's case required the jury to make too many inferences, but he only provides one additional example: to convict him, he says, the jury had to conclude that discrepancies between Hartwell's testimony and the charging affidavit were mistakes.  The veracity of Hartwell's affidavit and testimony are matters best left to the factfinder which can make credibility assessments based on live testimony.

[4]  Defendant has referred this Court to studies suggesting that many people subconsciously associate African-American defendants with criminality.  These implicit biases, he argues, may explain why a jury would convict him despite inferential gaps in the State's case.  Extra-record explanations of a jury's verdict are not relevant to an analysis of the sufficiency of evidence admitted in a trial.  Therefore, we are not required to address implicit bias here.  However, as stated at oral argument, because we consider implicit bias a potential threat to the judicial system, we invite counsel in this case to propose strategies to combat any negative effect that implicit bias might have on the criminal justice system to all existing and relevant agencies or commissions.  See, e.g., M. Bennett & V. Plaut, Looking Criminal and the Presumption of Dangerousness: Afrocentric Facial Features, Skin Tone, and Criminal Justice, 51 U.C. Davis L. Rev. 745 (2018); J. Levinson, Forgotten Racial Equality: Implicit Bias, Decisionmaking, and Misremembering, 57 Duke L.J. 345 (2007); J. Levinson et al., Guilty by Implicit Racial Bias:  The Guilty/Not Guilty Implicit Association Test, 8 Ohio St. J. Crim. L. 187 (2010); J. Rachlinski, et al., Does Unconscious Racial Bias Affect Trial Judges?, 84 Notre Dame L. Rev. 1195 (2009).

St. Johnsbury Police Department. Several of these defendants received deferred sentences with probation, rather than incarceration.

¶ 18. The court sentenced defendant to a minimum of sixteen months of incarceration, a maximum of thirty-six months, and credited him for the time he had served up to that point. Defendant appeals, arguing that the court abused its discretion by not sufficiently considering his argument that his sentence was statistically harsher than sentences imposed on other defendants who were convicted of a similar charge.

¶ 19. Trial courts are afforded "broad discretion" at sentencing. State v. Webster, 2017 VT 98, ¶ 45, __ Vt. __, 179 A.3d 149. We review criminal sentences on appeal for abuse of discretion. State v. Sullivan, 2018 VT 112, ¶ 9, __ Vt. __, __ A.3d __. "If a sentence falls within the statutory limits, is not based upon improper or inaccurate information, and is not the result of personal animus or bias, it will be affirmed." Webster, 2017 VT 98, ¶ 45. Sentencing courts are to consider "the history and character of the defendant, the need for treatment, and the risk [the defendant poses] to self, others, and the community at large." 13 V.S.A. § 7030(a).

¶ 20. Here, the sentencing court did not abuse its discretion. It considered the nature of the crime, emphasizing that all actors in the heroin distribution chain contribute to a significant problem, and that dispensing less than 200 milligrams of heroin has been declared a felony by the Legislature. Assessing defendant's history and characteristics, the court acknowledged his strong employment background and his participation in charitable activities, but also considered his lengthy criminal history and—most troubling to the court—that he had incurred forty-five jail infractions during ten months of pre-trial incarceration. This suggested to the court that, contrary to defendant's assertion that he had reflected upon his actions during his incarceration, he had not reformed his behavior. The court concluded that defendant's release would pose a risk to himself and others. The court also explained that the data on other Vermont drug sentences cited in

defendant's sentencing memorandum were not helpful because the facts and circumstances of the underlying offenses and the characteristics of those defendants were not mentioned.

¶ 21.   A defendant does not establish reversible error simply because a trial court has imposed a longer sentence than in other cases involving the same or a similar charge.  "That a different judge may have imposed a different sentence or weighed the sentencing factors differently is not the test."  Webster, 2017 VT 98, ¶ 48.  Even if the trial court had relied entirely on factors that would be present in every dispensing-under-200-milligrams-of-heroin case—which it did not—imposition of a more lengthy sentence compared to other cases involving the same charge would not be reversible error, provided that the sentence under review is within statutory limits, is not based on improper or inaccurate information, and is not the product of personal animus or bias.  Id.  Defendant does not challenge his sentence on any of these grounds.  Therefore, the sentencing court did not abuse its discretion.

¶ 22.   Defendant suggests that it was improper for the sentencing judge to have imposed a harsher sentence than was requested by the prosecution.  However, this alone is not an abuse of discretion unless the court also relied upon an improper factor in imposing the sentence.  See State v. Neale, 145 Vt. 423, 436, 491 A.2d 1025, 1033 (1985) (concluding that sentencing court "gave weight to an improper factor" in imposing longer sentence than requested by prosecution).  Defendant does not argue that the sentencing court here relied on an improper factor.

Affirmed.

FOR THE COURT:

_____
Associate Justice

9